**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 09 Civ. 23768 (JLK) (TEB)

------------------------------------------------------------------X
DANIEL TOUIZER,

                              *Plaintiff,*

v.

FRANCOIS GARCIA

                              *Defendant.*
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR A TEMPORARY RESTRAINING**
**ORDER AND A PRELIMINARY INJUNTION**

    Plaintiff, Daniel Touizer ("Touizer"), by and through his undersigned counsel, hereby submits this memorandum of law in support of its application for a temporary restraining order and a preliminary injunction to enjoin Defendant Francois Garcia ("Garcia"), his respective agents, representatives, successors, assigns, affiliates, servants, employees, licensees, attorneys, all those acting in concert or in participation with Garcia, and/or any Internet Service Provider from operating, maintaining, hosting, or publishing the defamatory websites www.danieltouizer.com and www.eric-gozlan.com or publishing the same, or substantially similar content, via the internet or otherwise.

**PRELIMINARY STATEMENT**

    This action arises out of Garcia's malicious defamation of Touizer, and tortious interference with Touizer's business relationships, through the publication of the Offending Websites and numerous e-mails sent to Touizer's employees and business contacts (the "Defamatory E-Mails") falsely and maliciously accusing him of, *inter alia*, being a drug addicted

murderer with a prostitute addiction. These baseless allegations are not only false, they are malicious and solely designed to injure Touizer's hard earned reputation as a respected businessman. Garcia has published these allegations without any regard to whether or not these allegations are true, which they are not.

This type of defamatory speech is not entitled to any First Amendment protection whatsoever. Left unchecked, the Offending Websites and the Defamatory E-Mails will continue to cause Touizer irreparable and unquantifiable injury to his business and his reputation—injuries which have already manifested themselves in aborted business deals and shareholder unrest. Indeed, given the continuous publication of the Offending Websites on the internet Touizer has no adequate remedy at law that could possibly efficiently cure this ongoing irreparable injury. Accordingly, a temporary restraining order and preliminary injunction must be entered in this case prohibiting the continued publication of the Offending Websites (or content similar to that contained thereon) and barring Garcia from sending additional Defamatory E-mails to Touizer's employees, customers, and business associates.

## STATEMENT OF FACTS

### A. Touizer's Reputation as a Business Asset

Touizer is a Florida citizen and the founder and chief executive officer of Cinergy Health, Inc. ("Cinergy"), a company founded in 2003 as a nationwide provider of affordable health insurance. Touizer has spent significant time, effort, energy, expense and considerable resources in establishing his stellar business reputation. *See*, the Declaration of Daniel Touizer, signed on December 29, 2009 ("Touizer Dec.") ¶¶ 1-4. The continued viability of Cinergy, and the medical coverage it provides to tens of thousands of families, is directly tied to, and dependent upon, my reputation and the goodwill I have generated on behalf of Cinergy. *Id.* ¶ 5.

Touizer is also the chairman and chief executive officer of Aria Entertainment LLC ("Aria"), a company in the business of financing and co-producing original feature films for worldwide viewing audiences. *Id.* ¶ 6. Touizer's reputation is an integral part of obtaining financing for Aria's feature films as well as being integral to the successful marketing of Aria's feature films. *Id.* ¶7.

### B. IMPFM and Touizer's Introduction to Garcia in 2000

In or about 2000, before Aria was formed, Touizer invested money in a film project being produced by Innovative Motion Pictures and Future Media Inc. ("IMPFM"), a company in which his cousin, Eric Gozlan ("Gozlan") was marginally involved. *Id.* ¶ 8. Garcia and several others were also involved in IMPFM. *Id.* ¶ 8

### C. Garcia's Defamatory Scheme

Nearly ten years later, on or about September 15, 2009, Gozlan received a telephone call from an unidentified individual, who informed Gozlan that he was calling on behalf of Garcia. *See*, Declaration of Eric Gozlan, signed on December 28, 2009 ("Gozlan Dec.") ¶ 6. The unidentified caller told Gozlan to meet with Garcia "if he [Gozlan] want[ed] to avoid getting lawyers involved." *Id.* ¶ 7. Gozlan called Garcia on the same day, and Garcia informed Gozlan that "we have to meet. If we do not meet, then sh*t will hit the fan." *Id.* ¶ 8. Garcia refused to specify why a meeting was necessary and told Gozlan that "I [Garcia] don't talk on the phone, we have to meet in person." *Id.* ¶ 9. Gozlan suspected that Garcia, who was facing criminal charges in Canada arising from his involvement in an international DVD piracy ring, was trying to extort money from Gozlan and therefore refused to meet Garcia. *Id.* ¶¶ 10-11.

Subsequently, Gozlan informed Touizer that he received a menacing e-mail from Garcia, using the address skycorpinvestorsfraud@gmail.com threatening to publish a "report of complete fraud, abuse and theft" committed by, *inter alia*, Touizer and Gozlan. Touizer Dec. Ex. A.

### D.   Garcia Launches the Offending Websites

Shortly thereafter, in or about November 2009, Garcia participated in the creation and publication of the Offending Websites. Both of the Offending Websites illegally use Touizer's name, image, and likeness without his consent. The Offending Websites contain false, defamatory, outrageous, and insulting allegations about Touizer. Touizer Dec., Ex. B and C. Specifically, with respect to the Touizer Website:

   a. The home page contains a link to other pages purportedly about Touizer. These links purport to link to information concerning, among other things:[1]

       i. "Current Scams by Touizer;"

       ii. "Past Scams by Touizer;"

       iii. "Touizer Oil Deals;"

       iv. "Touizer List of Past Victims;"

       v. "Aria Media Holdings Scam;"

       vi. "American Terminal Corp. Scam;"

       vii. "Touizer Drug Use;" and

       viii. "Touizer Prostitute Addiction"

   b. The home page of the Touizer Website states "Daniel Touizer Miami-Montreal Fraudulent Unlicensed Investment Broker Palm Health Benfits Cinergy Healtyh American Terminal Corp. Aria Mea Holdings www.equityfeed.com otccharts.com" followed by the image of Touizer's face superimposed on a picture of a man in his underwear with the phrase "Your money is in good hands;"

---

[1] All typographical errors contained in the quoted statements are in the original published version of the Offending Websites.

  c. The home page further states that "This Site is a non lucrative information source and it has been published with the sole intention of informing past, current, future victims and as law enforcement agency's currently investigating the subjects of this site;

  d. The home page also has a picture of a man in a chicken suit talking on a pay telephone with the phrase "Are you a victim of Daniel Touizer?" superimposed on it;

Each of the Offending Websites contains links to the other. Each of the home pages for the Offending Websites falsely state:

### WHO IS DANIEL TOUIZER AND ERIC GOZLAN ?

They are career telemarketers who have been defrauding Canadian and USA investors for over a decade , they are based out of Montreal Canada and Miami USA , using several bogus names and corporations they claim to be investment brokers who can guarantee large returns on investments packages (so called privileged deals ranging from Film Productino, Medical Insurance, ATM Machines, Oil deals, Real State, Online Trading ,just to name a few).

The so called investments are often non existent or with no chance of success. except for their own personal gain (average commission 25% to 45% not including expenses.

Their targeted "clients" are usually people / names they purchase from leads brokers who offer list of "accredited investors (these lists include contact information and Background information , the purchase price for a list can range from $25 to $100 per name , this is what they consider a "mouch" and what others would consider a victim)

www.danielTouizer.com along with www.eric-gozlan.com (Eric Gozlan is Touizer cousin who operates the scam out of Montreal )will soon release and post online the following information in order to put a stop to their activities and bring justice to their door, (Madoff could use some ne friends)

Names of past ans current investors who invested in their fraudulent deals

Names of corporations / Deals they have been selling or have sold for the past 15 years (some of them currently under investigation by the securities commission Both Canada and USA)

Their personal background information

How they operate

Their current deals

Their websites

Home Addresses

Phone Recordings

Pictures

Links (to law firms , securities commission , DA'S, La enforcement)

and more

### E. Garcia Transmits Defamatory E-Mails Containing Links to the Offending Websites to Touizer's Contacts

In addition to publishing the Offending Websites, Garcia sent false and defamatory e-mails to each and every employee of Cinergy containing a link to the Offending Websites. To further destroy Touizer's reputation in the film industry, Garcia has been sending defamatory e-mails to various actors, entertainers, and other members of the film industry. A copy of such an e-mail is annexed to the Touizer Dec. as **Exhibit D**. Moreover, Garcia also transmitted defamatory emails, which contain links to the Offending Websites, to Touizer's accountant, attorney, and the New York State Governor's office. *Id.* A copy of the e-mail sent to Touizer's accountants Holthouse, Carlin & Van Trigt LLP dated November 19, 2009 is annexed to the Touizer Dec. as **Exhibit E**. These e-mails refer to Touizer as a "scum and a thief" and accuse him of being a "murderer ... who deserves nothing more than capital punishment" based solely on the "assum[ption] that among the thousands of investors he has defrauded there got to be a few suicides." *See,* Touizer Dec. **Exhibit E**. Garcia has, in addition to all of the foregoing, also posted links to the Offending Websites on various internet message boards under the aliases "wdog43" and "Tom." Touizer Dec. ¶ 25.

### F. The Effect of Defendants' Defamatory Scheme

As a direct result of Garcia's aforementioned conduct, Touizer's reputation and his ability to conduct his business affairs has been irreparably harmed, causing him to incur substantial financial loss as well as unquantifiable injury to his reputation. Touizer Dec. ¶ 27.

Only one such example is that a crucial potential investor refused to consummate a planned deal with Aria after reviewing the contents of the Offending Websites. *Id.* ¶ 28. This harm is ongoing and will continue as long as the Offending Websites are operating.

In addition, Touizer has expended significant sums of money to a public relations firm to combat the detrimental effect of the Offending Websites and the defamatory e-mails sent by Garcia. *Id.* ¶ 30. Specifically, *inter alia*, hundreds of Cinergy's shareholders have begun contacting Cinergy and Touizer regarding the contents of the Offending Websites, which are causing significant shareholder unrest. Touizer Dec. ¶ 31.

## ARGUMENT

### THE COURT MUST ENJOIN GARCIA FROM OPERATING, MAINTAINING, HOSTING OR PUBLISHING THE OFFENDING WEBSITES

The Court must award a preliminary injunction where the movant demonstrates that: (1) there is a substantial likelihood of success on the merits of its claims; (2) that it will suffer irreparable injury unless the injunction is granted; (3) the threatened injury to the movant outweighs any possible damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Qantum Communications Corp. v. Star Broadcasting Inc.*, 382 F.Supp.2d 1362 (S.D. Fla. 2005). All of these elements are satisfied. Accordingly, Touizer is entitled to a temporary restraining order and preliminary injunction.

1. **Plaintiff Is Likely to Succeed on the Merits of All of His Claims**

The Complaint states two substantive causes of action: (1) defamation and (2) tortious interference with business relationships.[2] Plaintiff is likely to succeed on the merits of each

---

[2] The third cause of action is for preliminary and permanent injunctive relief based upon the first two causes of action.

cause of action and each cause of action supports a preliminary injunction (and temporary restraining order).

### A. <u>Defamation</u>

In order to prevail on a cause of action for defamation, a party must show that the defendant: (i) published to a third party, (ii) a false and defamatory statement, (iii) that the defendant either knew was false or published negligently, which (iv) caused plaintiff actual damages. *Jews for Jesus v. Rapp*, 997 So.2d 1098 (Fla. 2008).

#### i. **Publication**

Here the first element is satisfied because Garcia published (and continues to publish) defamatory statements regarding Touizer on the Offending Websites and in the Defamatory E-Mails. Compl. ¶ 22-31; *see Axiom Worldwide, Inc. v. Becerra*, 2009 WL 1347398 (M.D. Fla. 2009) (finding that, because "the statement was published on [Defendant's] website and that it continued to be published…Plaintiffs' allegations [of publication] are sufficient…").

#### ii. **False and Defamatory Statements**

Next, the content of the Offending Websites is completely false and designed for no other purpose other than to expose Touizer to "hatred, distrust, ridicule, contempt, [and] disgrace" in the eyes of the community and thereby cause him to suffer injury in his "personal, social, official, [and] business relations." *Jews for Jesus, Inc.*, 997 So.2d 1098 (Fla. 2008) citing *Peck v. Tribune Co.*, 214 U.S. 185, 188, 29 S.Ct. 554, 53 L.Ed. 960 (1909); *Land v. Tampa Times Pub. Co.*, 68 Fla. 546, 67 So. 130, 130 (Fla. 1914); *see also Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593 (Fla. 4th DCA 1983) ("The Court must consider all the words used, not merely a particular phrase or sentence. …[W]hen words and pictures are presented together, each is an important element of what, in toto, constitutes the publication. Articles are to be considered with their

illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines."). Viewed *in toto*, the Offending Websites are offensive and clearly designed for no other purpose than to humiliate and embarrass Touizer. For example, the statements that Touizer has a "prostitute addiction," a drug problem, and is involved in numerous "scams" are false (Compl. ¶ 39-40, Touizer Dec. ¶ 32-38). These *ipse dixit* statements (and the insulting images of Touizer on the Offending Websites) are designed solely to embarrass and ridicule Touizer and to cause harm to his reputation in the community as well as to his business and property. Moreover, the accusation contained in one of the Defamatory E-mails, that Touizer is a murderer based solely on Garcia's "assumption" is incredulous. Accordingly, the second element of Touizer's defamation claim is satisfied.

### iii.    Statements Published Were Known to be False or Negligently Published

To satisfy the third element, Touizer, a private person, must only show that Garcia acted negligently (*i.e.*, without reasonable care, in determining whether the defamatory statements are false before publishing them). *Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800 (Fla. 1st DCA 1997). Here the third element is satisfied because it is clear that Garcia acted with no care whatsoever in publishing the Offending Websites. None of the malicious allegations on the Offending Websites even purport to rely on fact. This is highlighted by the fact that nearly all of the maliciously defamatory statements contained on the Offending Websites link merely to pages that are "under construction" or "coming soon." Moreover, the defamatory statement that Touizer is a murderer is explicitly based only on Garcia's "assumption."

### iv.    Damages

In this case, the fourth, and final, element of Touizer's claim is satisfied by presumption because the defamatory statements on the Offending Websites constitute libel *per se* and

therefore actual damages are presumed. *Piplack v. Mueller*, 121 So. 459, 460 (Fla. 1929) (holding statements to be *per se* defamatory because they "needed no explanation, but were direct and clear in meaning..."); *see also Layne v. Tribune Co.*, 146 So. 234, 236 (Fla.1933) ("Libel per se may be defined as the false and unprivileged publication by letter, newspaper, or other form of writing, of unfounded statements or charges which expose a person to hatred, distrust, contempt, ridicule, or obloquy...and which are such that in their natural and proximate consequence, will necessarily cause injury to the person concerned, in his, social, official, or business relations of [*sic*] so that legal injury may be presumed or implied from the bare fact of the publication itself.") (citation omitted).

Here the Offending Websites and the Defamatory E-Mails expose Touizer to hatred, distrust, contempt and ridicule and baselessly accuse him of crimes. Specifically, the Offending Websites and Defamatory E-Mails falsely accuse Touizer of murder, securities fraud, being an unlicensed "investment broker," having a "prostitute addiction," and being under investigation by Canadian and American authorities for various crimes which constitute felonies. These defamatory statements constitute libel *per se*. *Wolfson v. Kirk*, 273 So.2d 774, 777 (Fla. 4th DCA 1973) (holding a defamatory "communication [to be] actionable per se – that is without a showing of special damage – if it imputes to another ... a criminal offense amounting to a felony.") (internal quotation omitted). Accordingly, Touizer's actual damages are presumed as a matter of law.

Because it is clear that the Offending Websites are defamatory as a matter of law, and Garcia has no cognizable defense, Touizer has more than adequately shown the likelihood of his success on the merits of his defamation cause of action. Accordingly, the first element necessary for the issuance of a preliminary injunction (and temporary restraining order has been satisfied).

### B. <u>Tortious Interference With Business Relationships</u>

To prevail on a cause of action for tortious interference with a business relationship a plaintiff must show: "(i) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (ii) the defendant's knowledge of the relationship; (iii) an intentional and unjustified interference with the relationship by the defendant; and (iv) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 385 (Fla. 4th DCA 1999).

#### i. Touizer's Business Relationships and Defendant's Knowledge Thereof

The first and second elements of Touizer's tortious interference cause of action cannot be disputed. Touizer has a business relationship with countless Hollywood film investors, as well as representatives of actors/actresses/writers/producers and others throughout the film industry, through Aria. Touizer Dec. ¶ 23. Touizer also has business relationships with many individuals, companies, and shareholders regarding the health insurance company Cinergy. Compl. ¶ 48; Touizer Dec. ¶ 26-31. Tellingly, the Touizer Website's references to the "Aria Media Holdings Scam" and "Cinergy Health" clearly demonstrate Garcia's knowledge of those business relationships.

#### ii. Defendant's Intentional Interference with Touizer's Business Relationships

Garcia, who has no interest in either Aria or Cinergy, is intentionally and unjustifiably interfering with Touizer's business relationships by publishing the false and defamatory Offending Websites and by sending e-mails to Cinergy employees and Aria partners with links to the Offending Websites. Compl. ¶ 28-31, Touizer Dec. ¶ 22-25.

#### iii. Damages to Touizer

Finally, Touizer has been damaged as a result of Garcia's tortious interference in the form of damage to his reputation and his businesses reputation, as well as the disruption of

several business deals and the costs of hiring a public relations firm to counteract the defamatory content of the Offending Websites. Compl. ¶ 36; Touizer Dec. ¶ 30. Indeed this interference has already sabotaged at least one deal for Aria and caused significant shareholder unrest in Cinergy. Touizer Dec. ¶ 31.

Accordingly, Touizer has established the likelihood of success on the merits of his tortious interference claims, and the entry of a preliminary injunction (and temporary restraining order) is justified.

### 2. <u>Touizer Has Suffered and Continues to Suffer Irreparable Injury</u>

The Offending Websites are publishing the defamatory statements contained therein every day to the entire world causing continuous, permanent, and irreparable injury to Touizer's reputation and the substantial goodwill generated through his efforts to promote the business activities of Aria and Cinergy. Moreover, Touizer has no adequate remedy at law because his injury cannot be adequately compensated by money damages and unless the Offending Websites are shut down and the Garcia enjoined from publishing similar defamatory statements in the future, the harm to Touizer will continue unabated, increasing exponentially with each passing day.

Not only are the Offending Websites causing Touizer irreparable reputational harm, they are also causing (and continue to cause) Touizer unquantifiable and irreparable economic injury. Compl. ¶ 35, 46, 54; Touizer Dec. ¶ 29. Indeed, Garcia is tortiously interfering with Touizer's business interests, specifically Cinergy and Aria resulting in shareholder unrest and the sabotaging of at least one Aria project. Touizer Dec. ¶ 28. This injury is irreparable and ongoing. More importantly, because of the anonymous nature of the internet, it is impossible to determine the number of people who have visited the Offending Websites and based upon that

viewing decided to cancel their health care coverage provided by Cinergy or to refuse to approach Aria, it is impossible to quantify. This further underscores the necessity of the requested injunctive relief.

Accordingly, an action at law would not be a complete, prompt and efficient remedy. *Wynn Oil Co. v. Purolator Chemical Corp.*, 536 F.2d 84, 86 (5th Cir. 1976). Indeed, the requested injunction is necessary here because of the nature of the defamation, i.e. continuous publication on the Internet. *Saadi v. Maroun*, 2009 WL 3617788 at *2 (M.D.Fla. Nov. 2, 2009) (where the nature of the defamatory statements is "repetitive and continuing" by virtue of their publication on the internet, injunctive relief is "both appropriate and necessary.") Without an injunction, Touizer would be required to bring a new lawsuit for damages every day that the website is on the internet, and even then, there would be no guarantee that the defamation would be deterred. Accordingly, Touizer is entitled to a temporary restraining order and injunction because he is being irreparably harmed each and every day and he has no adequate remedy at law.

3.  **There is No Possible Damage to Garcia That Could Result From the Entry of An Injunction and Temporary Restraining Order**

Garcia will suffer no harm as a result of this injunction. Indeed, as explicitly stated on both Offending Websites, "[t]his Site is a non lucrative information source." Accordingly, Garcia cannot even allege that the enjoining of the publication of the Offending Websites would cause him any economic harm or any damages.

4.  **The Requested Injunction and Temporary Restraining Order Serves the Public Interest**

The requested temporary restraining order and preliminary injunction is not adverse to the public interest. In fact, it serves the public interest by preventing a party from publishing wholly false and defamatory statements on the internet where such false and defamatory

statements can be viewed by anyone causing an individual member of the public significant humiliation and embarrassment without their knowledge. Intentional lies "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

Indeed, the public's interest in free expression of ideas as codified in the First Amendment is not even a concern in this case. *See Carey v. Brown*, 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) ("[S]peech on matter of purely private concern is of less First Amendment concern.") Accordingly, where, as here, a defendant has engaged in an intentional smear campaign through defamatory internet sites, the public interest is served through the grant of injunctive relief that is proper and necessary to stem the unfettered flow of the defamatory material to the public. *See, e.g., International Profit Associates, Inc. v. Paisola*, 461 F.Supp.2d 672, 679 (N.D. Ill. 2006) ("[I]t does not violate the principles of the First Amendment to enjoin defendants from continuing to include certain information on their website that is, on the record before the Court, demonstrably false and defamatory, and that [Plaintiff] has shown will cause it irreparable harm and against which it has no adequate remedy at law.

## CONCLUSION

For the foregoing reasons, Touizer respectfully requests that the Court (A) a Temporary Restraining Order be issued enjoining and restraining Garcia, his respective agents, representatives, successors, assigns, affiliates, servants, employees, licensees, attorneys all those acting in concert or in participation with Garcia, and any Internet Service Provider from operating, maintaining, hosting, or publishing the websites www.danieltouizer.com and

www.eric-gozlan.com or publishing the same of substantially similar content via the internet or otherwise; (B) issue a similar preliminary injunction; and (C) order such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       December 29, 2009

By: _____
Jacob L. Ratzan, Esq.
Jacob L. Ratzan, P.A.
*Attorneys for Plaintiff*
150 SE 2nd Avenue, Suite 901
Miami, Florida 33131
Tel: 786.406.1744

-and-

Darren Oved, Esq.
Brian S. Tretter, Esq.
Aaron J. Solomon, Esq.
OVED & OVED LLP
*Attorneys for Plaintiff*
101 Avenue of the Americas, 15th Floor
New York, New York  10013
Tel: 212.226.2376